**VIRGINIA MINING RESOURCES PTE. LTD.**
**Incorporated in Singapore(REG NO:201332862R)**
#07-10/11, 51, Goldhill Plaza, Singapore 308900
Email: info@virginiamr.com

Dated: April 14, 2015

Southern Coal Sales Corporation,
302 S.Jefferson Street, Ste 600,
Roanoke, VA 24011.
**Kind Attention**: Mr. Tom D. Lusk

**Sub**: Supply of High Vol-B Coal to Essar Steel Algoma Inc. (ESAI) by Virginia Mining Resources Pte. Ltd. (VMR) from Southern Coal Sales Corporation (SCSC).

**Reference**: i) RFQ: Essar Steel Algoma Inc. /COKING COAL/ESAI-112714-HV B.
ii) SCSC's letter dated April 02, 2015 and April 07, 2015 issued to ESAI.

Dear Sir,

We **"Virginia Mining Resources Pte. Ltd."**, **Singapore**, hereby ensure and guaranty payment to **Southern Coal Sales Corporation, VA, USA** for all High Vol-B Coal supplied to Essar Steel Algoma Inc. against **Purchase Order No 5900008453, Dated April 10,2015 along with Revision #1, Dated April 14,2015, (Attachment-A),** issued by ESAI at an agreed price of US$98.20 per ton FOB Sandusky Port, all inclusive,(less 2 % FOB mine price due Global Sales Innovations, LLC under the Sales Agency Agreement between SCSC and Global Sales Innovations), (Attachment-B), for supplying total quantity of 150,000 Net Tons, with tolerance up to +/- 10% as per the shipment schedule mentioned below and the agreed quality and other terms as referred to in the said purchase order.

Such payments will be made within two banking days after **"Virginia Mining Resources Pte. Ltd.", Singapore** receives payment from Essar Steel Algoma Inc. or within three banking days from the day such payment falls due under the terms of the purchase order i.e., 30 days after coal is shipped FOB Sandusky Port, whichever comes first subject to performance of agreed quality and other technical and commercial terms as per Purchase order issued by ESAI on VMR without material discrepancy in required shipping documents and receipt of the Invoice by ESAI. In the event of material discrepancy in required shipping documents, VMR and SCSC shall work together and use good faith and best efforts to resolve the discrepancy in an expedited manner and VMR shall then make such payment within 48 hours of the resolution of the discrepancy.

In the event that **"Virginia Mining Resources Pte. Ltd.", Singapore** does not receive any payment due under the terms of the Purchase order from Essar Steel Algoma Inc. before said payment is made to **Southern Coal Sales Corporation, VA, USA** under the terms of this agreement, an additional service fee @ US$ 0.20 per ton will be deducted from said payment made to SCSC. Payments will be by way of Bank transfer under an Open Account System on receipt of the documents and subject to performance of agreed quality and other terms as per Purchase order issued by ESAI on VMR without material discrepancy in required shipping documents. In the event of material discrepancy in required shipping

Page 1

documents, VMR and SCSC shall work together and use good faith and best efforts to resolve the discrepancy in an expedited manner and VMR shall then make such payment within 48 hours of the resolution of the discrepancy.

Shipping schedule and some of the quality parameters including applicable penalties are as below:

1) **Shipment Schedule:** Will be ratable and as per the schedule below.

| Month | April'15 | May'15 | Jun'15 | Jul'15 | Aug'15 | Sep.'15 | Oct.'15 | Nov.'15 |
|---|---|---|---|---|---|---|---|---|
| Quantity in tons | 18,000 Approx. | 18,000 Approx. | 18,000 Approx. | 36,000 Approx. | 18,000 Approx. | 18,000 Approx. | 18,000 Approx. | 18,000 Approx. |

2) **Quality, Penalties and Rejection limits:**

| S.No. | Parameter | Rejection Limit | Premium/Penalties |
|---|---|---|---|
| 1 | Total Moisture | >9.0% | 1% FOB mine price for each 1% below/above 7%, fraction prorata. |
| 2 | Ash | >7.5% | 2% FOB mine price for each 1% below/above 7%, fraction prorata. |
| 3 | Sulphur | >1.0% | 1% FOB mine price for each 0.1% above 0.9%, fraction prorata. |
| 4 | Volatile Matter | >36.0% | 1% FOB mine price for each 1% above 35%, fraction prorata. |

3) The total Alkali content shall not exceed 3% and in case in any shipment the value of total Alkali exceeds 3.3%, ESAI will have the right to reject the cargo.

4) The value of total Inerts shall be above 21%.

5) VMR shall pay to SCSC for this business / transaction net of commission agreed by SCSC with Mr. Steve Sears of "Global Sales Innovations" on the agreed sale price.

For VIRGINIA MINING RESOURCES PTE.LTD.

*[signature]*
Authorized signatory.
14/4/2015

page 2

# Attachment A

Essar Steel Algoma Inc.
Purchase Order

# Essar Steel Algoma Inc.

Essar Steel Algoma Inc.
105 West Street
Sault Ste. Marie
Ontario, Canada
P6A 7B4



## PURCHASE ORDER
PO NO      : 5900008453
DATE       : 10.04.2015
Contract No :

---

Company  VIRGINIA MINING RESOURCES PTE LTD
51 , GOLDHILL PLAZA
#07-10/11 308900
Singapore-308900
Singapore,Singapore.
Ph.       :001-306-2613325
Fax       :4720888
E-mail    :HARPREET.SINGH@VIRGINIAMR.COM

**PLEASE SUPPLY THE FOLLOWING MATERIALS**
*Payment date will be determined based upon the date of Invoice receipt.
*Terms & Conditions: Those which apply to this order are included or has been communicated separately. Contact the Buyer listed below if necessary.

Buyer details for this PO:
Name    : Ron Spina
Tel.    : 705-945-2551
Fax.    : 705-945-2483
Email   : RON.SPINA@ESSAR.COM

Mail Original Invoices to:

Operations Accounting
ESSAR Steel Algoma Inc.
105 West Street
Sault Ste. Marie, Ontario
P6A 7B4

Or Email Invoices to:Algoma.Invoices@essar.com

*Canadian Invoices to be invoiced G.S.T excluded from price.

*Show the Purchase Order Number, Item number and material code in on all
 Documents, packages, invoices, Packing slips and bills of lading pertaining to this purchase order.

*Acknowledge the receipt of the Purchase Order by notifying the Purchasing department only if there is a variance.

Quality, Penalties and Rejection limits:

| Parameter | Rejection Limit | Premium/Penalties |
|---|---|---|
| Total Moisture | >9.0% | 1% FOB mine price for each 1% below/above 7%, fraction prorata. |
| Ash | >7.5% | 2% FOB mine price for each 1% below/above 7%, fraction prorata. |
| Sulphur | >1.0% | 1% FOB mine price for each 0.1% above 0.9%, fraction prorata. |
| Volatile Matter | >36.0% | 1% FOB mine price for each 1% above 35%, fraction prorata. |

The total Alkali content shall not exceed 3% and in case in any shipment the value of total Alkali exceeds 3.3%, ESAI will have the right to reject the cargo.

# Essar Steel Algoma Inc.



Supplier Code : 156107
Supplier Name : VIRGINIA
MINING RESOURCES PTE
LTD

**PURCHASE ORDER**
PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|

The value of total Inerts shall be above 21%.

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|
| 00020 | 100000509 | TON | 150,000 | 98.20/1 TON | 14,730,000.00 |
| HIGH VOLATILE B COAL | | | | | |

Manufacturer Part Number:

Manufacturer Name:

Delivery Date : 04/13/2015

Taxes Applicable 0.00

Size (0-50 mm) % 100

Fraction below 0.50mm % (Max) 4 TYPICAL, 9 USL

Total Moisture(As received) % (Max) 6.5 TYPICAL, 8 USL

Proximate analysis( on air dry basis):

Volatile Matter % (Range) 35 TYPICAL, 33 LSL, 36 USL

Ash % (Max) 6.0 TYPICAL, 7.0 USL

Inherent Moisture % (Max) 0.5 TYPICAL, 1 USL

Fixed Carbon By Difference 59 TYPICAL, 57 LSL, 61 USL

Sulphur % (Max) 0.92 TYPICAL, 1.0 USL

Phosphorus % (Max) 0.0035 TYPICAL, 0.0045 USL

........cont'd. Page 2 of 1

# Essar Steel Algoma Inc.



Supplier Code :156107
Supplier Name :VIRGINIA
MINING RESOURCES PTE
LTD

**PURCHASE ORDER**
PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|
| | | | | | |

Coking Properties

Crusible Swelling Number/Free Swelling Index Num (Min) 8.5 TYPICAL, 7 LSL

Gray King Type Num (Min) G7 TYPICAL, G6 LSL

Audibert-Arnu Dilatometer test:

Soften Temperature (T1) °C   361

Max contraction Temp. (T2) °C 407

Max dilatation Temperature (T3) °C 454

Contraction % -24

Dilation %145

Total dilation %169

Gieseler Plastometer Test:

Initial Softening Temp at 1 ddpm. °C (Min) 397 TYPICAL, 380 LSL

Temperature of Max fluidity °C (Min).TYPICAL, 410 LSL

Plastic range at 1 ddpm °C (Min) 78 TYPICAL, 72 LSL

Maximum Fluidity 28000 TYPICAL, 20000 LSL, 30000 USL

Petrographic Analysis:

MMR of Vitrinite % (Range) 0.98 TYPICAL, 0.95 LSL, 1.0 USL
.......cont'd. Page 3 of 1

Case 7:19-cv-00220-EKD   Document 1-1   Filed 03/09/19   Page 6 of 17   Pageid#: 12

# Essar Steel Algoma Inc.



**Supplier Code :** 156107
**Supplier Name :** VIRGINIA MINING RESOURCES PTE LTD

## PURCHASE ORDER
PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|

Vitrinite Distribution (V5-V10) % (Min) V8-V11 TYPICAL, V8 LSL

Vitrinite % (Min) 68.3% TYPICAL, 67% LSL

Break up of Vitrinite % (V5,V6,V7#..V18) V8-10%, V9-32%,V10-22%, V11-4% TYPICAL

Total Reactives % (Range) 79% TYPICAL, 77% LSL, 81% USL

Total Inerts % (Range) 21% TYPICAL, 21 %LSL, 23% USL

Mineral Matter % 3.6% TYPICAL

Composition Balance Index(CBI) % (Range) 0.64 TYPICAL, 0.59 LSL, 0.69 USL

Ash Fusion Temperatures

Deformation Temp (DT) C 1438°C (2620°F) TYPICAL

Hemi Sphere Temp(HT) C 1535°C (2794°F) TYPICAL

Sphere Temp(ST) 1494°C (2720°F) TYPICAL

Free Flow Temp (FT) C (min) 1538°C (2800°F) TYPICAL

Hard Groove Index Num 50 TYPICAL

Ultimate analysis:

Carbon % 83.4 TYPICAL

Hydrogen %5.07 TYPICAL

.......cont'd. Page 4 of 1

Case 7:19-cv-00220-EKD   Document 1-1   Filed 03/09/19   Page 7 of 17   Pageid#: 13

# Essar Steel Algoma Inc.



Supplier Code :156107
Supplier Name :VIRGINIA
MINING RESOURCES PTE
LTD

**PURCHASE ORDER**
PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|

Nitrogen %1.32 TYPICAL

Oxygen % (max) 5.54 TYPICAL, 6.25 USL

Properties of coke produced by straight carbonization of Coal(S) offered

Micum index M40% 70 TYPICAL

Micum index M10 % 9 TYPICAL

CSR % 50 TYPICAL

CRI % 28 TYPICAL

Carbonization Study:

Contraction by Sole Heated Oven (SHO) for test coal sample %

Expansion pressure during Carbonization of the test coal in the moveable wall oven in KPA/Psi < 1.4 psi TYPICAL

Complete analysis of Coal ash

$SiO_2$ % 56.27 TYPICAL

$Al_2O_3$ %28.31 TYPICAL

$Fe_2O_3$ %5.84 TYPICAL

MgO %1.00 TYPICAL

MnO %0.02 TYPICAL

.......cont'd. Page 5 of 1

# Essar Steel Algoma Inc.



**Supplier Code** :156107
**Supplier Name** :VIRGINIA
MINING RESOURCES PTE
LTD

## PURCHASE ORDER

PO NO   : 5900008453
DATE    : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|
| P2O5 %0.09 TYPICAL | | | | | |
| SO3 %1.92 TYPICAL | | | | | |
| Na2O %0.48 TYPICAL | | | | | |
| K2O % 2.73 TYPICAL | | | | | |
| Total Alkali(K2O+Na2O) % (max) 3.00 TYPICAL, 3.00 USL | | | | | |
| Relative degree of oxidation (Transmittance) % (min) 94% TYPICAL, 91% USL | | | | | |
| | | | Total net value excl. tax USD | | 14,730,000.00 |

**Ship Terms** : FOB SANDUSKY PORT LOADED VESSEL
**Payment Terms** : NET 45 DAYS, Curr. USD

Title / Transfer. Seller warrants that, at the time of delivery, title to all coal delivered hereunder shall be free and clear of all liens, encumbrances and claims of all third parties prior to the transfer of title to Buyer. Title and risk of loss shall pass to Buyer as the coal is progressively loaded into the transport vehicle. For any Non#Conforming Shipment, title to and risk of loss of coal shall revert back to Seller immediately upon any rejection by Buyer as provided elsewhere in this Agreement.

Sampling / Analysis: Coal will be sampled at origin. Such sampling and analysis will be performed in accordance with ASTM Standards by the Seller with the cost thereof for Seller#s account, however if the Buyer#s sample is requested for analysis, the cost thereof shall be for Buyer#s account.

Coal testing: Seller shall provide, within 24 hours of completion of loading, ten car sublot analysis for moisture, ash, sulfur and volatile matter. Seller shall provide the mathematical weighted average of these sublots and also create a physical composite sample for the entire train. This physical composite will be analyzed by Seller for moisture, ash, sulfur, volatile matter, FSI, oxidation, fluidity and ARNU. A split of the physical composite will be provided and shipped to Buyer designated lab. At the request of Buyer, Seller shall provide analysis for fluidity, dilatation, ash

.......cont'd. Page 6 of 1

Case 7:19-cv-00220-EKD   Document 1-1   Filed 03/09/19   Page 9 of 17   Pageid#: 15

# Essar Steel Algoma Inc. 

Supplier Code :156107
Supplier Name :VIRGINIA
MINING RESOURCES PTE
LTD

**PURCHASE ORDER**
PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|

chemistry and petrography for up to 2 unit trains each calendar year at Seller#s cost. Any request for additional analysis will be for the Buyer#s account. Any additional analysis costs shall be at Buyer#s expense

Rejection Rights: Seller shall make commercially reasonable best efforts to ship a Product that conforms to the relevant specifications and specifically to ship Product that does not exceed the rejection values. Buyer shall have the right to reject a non-conforming train if the right of rejection is exercised within 72 hours of Buyer#s receipt of the train quality analysis. Regardless of the time of receipt of the train quality analysis, under no circumstances may Buyer exercise its right of rejection after the coal is unloaded at Buyer#s facility. In that event, Buyer#s sole remedy for a non-conforming train is a reduction in Contract Price to be negotiated between the parties.

Seller shall replace the rejected coal on or before the last day of the originally scheduled delivery month. Buyer, at its election, may extend the time for delivery of replacement Coal. If the coal is not replaced, then the Buyer has the right to purchase an alternate coal from other sources. Seller shall pay to the Buyer the difference in price in case the price of the alternate coal is higher than the price of the Seller's coal. Notwithstanding the foregoing, the Seller will also pay the Buyer for any additional costs incurred by the Buyer in shipment of alternate coal.

Suspension Rights: If the quality of two consecutive Shipments exceeds the Rejection Limits of any parameters, Buyer, by written notice, may suspend further Shipments not then in transit. Such suspension shall remain in effect until Seller provides Buyer with reasonable assurances, acceptable to Buyer, that future Shipments will meet the required specifications under this agreement. If after 30 days from the date that Buyer notified Seller of such suspension, Seller is unable to establish to Buyer#s reasonable satisfaction that future Shipments will meet the required specifications under this agreement, Buyer may terminate this agreement immediately upon written notice to Seller or rescind the suspension and continue to accept coal.

Force Majeure, Changes in Laws, and Permits. If, because of Force Majeure, either Party is unable to carry out any of its obligations hereunder, and if such Party shall promptly give notice thereof to the other Party, then the obligations of the Party giving such notice shall be excused to the extent made necessary by such Force Majeure and during its continuance, provided, however, that the Party giving such notice shall use its commercially reasonable efforts to eliminate such Force Majeure. Any deficiencies in deliveries caused by Force Majeure shall be made up only if Buyer and Seller agree to do so, in which case the Parties will schedule any such make-up deliveries by mutual agreement. If the Force Majeure continues for 30 consecutive days and affects more than 50% of the coal Shipments that otherwise would have occurred, the Party not claiming Force Majeure may, at its option, terminate this Agreement on 3 business days prior written notice so long as the Force Majeure is continuing at the time notice is given. The term #Force Majeure# shall mean any event or condition (i) that is beyond the reasonable control of the Party affected, and (ii) that such Party is unable to prevent or provide against by the exercise of reasonable diligence. Examples of such events and conditions include, but are not limited to: acts of God or of the public enemy; insurrection or riots; strikes, lockouts or other differences with workmen; fire; storm; flood; explosion; nuclear

Case 7:19-cv-00220-EKD   Document 1-1   Filed 03/09/19   Page 10 of 17   Pageid#: 16

# Essar Steel Algoma Inc.



**Supplier Code :** 156107
**Supplier Name :** VIRGINIA
MINING RESOURCES PTE
LTD

# PURCHASE ORDER

PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|

disaster; shortage of utility; embargo; breakdown of equipment; order of civil or military authority; compliance with or other action taken to carry out the intent or purpose of any law or regulation; shortage of transportation equipment or other interruption in transportation; adverse geological conditions; and any other cause, whether of the kind specifically enumerated above or otherwise. Force Majeure shall not be based on (i) Buyer#s inability economically to use or resell the Coal to be purchased hereunder; (ii) Seller#s inability economically to produce or otherwise procure the Coal to be sold hereunder; or (iii) a change in market conditions, including the ability of Seller to sell Coal at a higher price or Buyer to buy coal or other fuels at a lower price, whether or not foreseeable. It is understood and agreed that settlement of strikes, lockouts and other labor disputes shall be entirely within the discretion of the Party declaring Force Majeure and that the above requirement to use commercially reasonable efforts to eliminate Force Majeure shall not require the settlement of strikes, lockouts and labor disputes when such course is inadvisable in the discretion of such Party.

The Parties recognize that legislative, regulatory, administrative or other governmental bodies or the courts may impose new laws or amend existing laws or change the interpretation or application of existing laws that may: (a) prevent Buyer from using the quality of coal set forth in this Agreement, or (b) make it necessary for Buyer to make material additional capital or operating expenditures to use the coal delivered hereunder, or (c) make it necessary for Seller to make material additional capital or operating expenditures to produce, process, prepare or load coal to be delivered hereunder, or (d) prevent Seller from mining, producing, or delivering the quality of coal set forth in this Agreement. In such cases, the affected Party shall give written notice to the other Party, and Buyer and Seller shall consider what steps can be taken by Buyer in the handling, transportation and use of such coal or by Seller in the production, processing, preparation and loading of coal, in order to accommodate such changes. If no such practicable solution to the problem is agreed upon by the Parties acting reasonably and implemented by either Buyer or Seller at least three (3) months prior to the effective date of the new or revised law, the foregoing shall operate to excuse the affected Party#s purchase or sale obligations hereunder to the extent such obligations are required to be reduced by the imposition or amendment of such laws, or to avoid such material additional capital or operating expenditures.

The obligations under this agreement are subject to Seller#s ability to operate the source mining complex and Buyer#s ability to operate the destination plant under existing permits, to maintain such permits and to obtain new permits as required, and to the condition that governmental, regulatory, and court actions will not hinder nor preclude the ability of each Party to operate the pertinent facilities as planned.

The obligations under this Agreement are subject to Seller#s ability to operate the source mining complex and Buyer#s ability to operate the destination plant under existing permits, to maintain such permits and to obtain new permits as required, and to the condition that governmental, regulatory, and court actions will not hinder nor preclude the ability of each Party to operate the pertinent facilities as planned. Circumstances of the nature described in the

# Essar Steel Algoma Inc.



**Supplier Code :** 156107
**Supplier Name :** VIRGINIA MINING RESOURCES PTE LTD

## PURCHASE ORDER
PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|

preceding sentence which affect performance of this Agreement shall constitute Force Majeure within the meaning of this section.
In the event that Seller is not the producer of the Coal to be supplied hereunder, for purposes of this section the terms #Party# and #Seller#, as applicable, shall include reference to any affiliated or unaffiliated third party that is the producer of the Coal. In the event that Buyer is not the owner/operator of the destination plant, for purposes of this section the terms #Party# and #Buyer#, as applicable, shall include reference to any affiliated or unaffiliated third party that is the owner/operator of the destination plant.
Freeze Proofing: Seller shall apply freeze proofing as required by the railroad and/or Buyer. Buyer shall reimburse Seller for the cost of such freeze proofing. MSDS reports shall be provided for any agent applied if requested by the Buyer.

ENVIRONMENTALLY SENSITIVE PRODUCT OR SERVICE
**********************************************

ESSAR STEEL ALGOMA IS COMMITTED TO BEING ENVIRONMENTALLY RESPONSIBLE AND COMPLYING WITH LEGISLATION AND OTHER REQUIREMENTS. SUPPLIERS AND SERVICE PROVIDERS MUST ENSURE THAT THEIR EMPLOYEES HAVE EMERGENCY PROCEDURES APPROPRIATE TO THE COMMODITY BEING DELIVERED AND THAT THE EMPLOYEES PROVIDING WORK ON BEHALF OF ESSAR STEEL ALGOMA ARE AWARE OF HOW ESSAR STEEL ALGOMA'S ENVIRONMENTAL POLICY MAY APPLY TO THAT WORK. SUPPLIERS AND CONTRACTOR EMPLOYEES MUST REPORT TO MILLSUPERVISION FOR AUTHORIZATION PRIOR TO ANY OFF-LOADING OR ACTIVITIES.

WHMIS COMPLIANCE:
IN ORDER TO COMPLY WITH WORKPLACE HAZARDOUS INFORMATION SYSTEM LEGISLATION ESAI MUST ENSURE THAT ESAI'S WORKERS RECEIVE THE NECESSARY HAZARD INFORMATION. IF YOUR PRODUCT IS CLASSIFIED AS A WHMIS CONTROLLED PRODUCT APPROPRIATE SUPPLIER LABELS AND MATERIAL SAFETY DATA SHEETS MUST BE

Case 7:19-cv-00220-EKD   Document 1-1   Filed 03/09/19   Page 12 of 17   Pageid#: 18

# Essar Steel Algoma Inc.



**Supplier Code :** 156107
**Supplier Name :** VIRGINIA
MINING RESOURCES PTE
LTD

## PURCHASE ORDER

PO NO : 5900008453
DATE : 10.04.2015
Contract No :

| ITEM NUMBER | Material Code | UNIT | QTY | RATE/UNIT (USD) | AMOUNT (USD) |
|---|---|---|---|---|---|

SUPPLIED TO ESAI'S ENVIRONMENTAL, HEALTH AND SAFETY DEPARTMENT PRIOR TO THE INITIAL SHIPMENT OF YOUR PRODUCT. PLEASE ENSURE THE MSD SHEETS REFER TO THE ESAI CATALOG NUMBER.

PLEASE SEND NEW OR MODIFIED MDS SHEETS TO BOB KASUBECK IN THE ENVIRONMENTAL HEALTH AND SAFETY DEPARTMENT AT ROBERT.KASUBECK@ESSAR.COM OR 705-945-2953.

Authorized Signatory.

........Page 10 of 1

# Attachment B

## Global Sales Innovation, LLC
## Sales Agency Agreement

March 9, 2015

Mr. Steve Sears
Global Sales Innovations, LLC
7907 Belcherwood
Chesterfield, VA 23832

Southern Coal Sales Corporation
302 S. Jefferson Street
Roanoke, VA 24011

Subject: Coal Sales and Agency Agreement

This letter agreement ("Agreement") covers the terms and conditions under which Global Sales Innovations LLC. ("GSI") will provide coal sales and marketing services for Southern Coal Sales Corporation including all subsidiaries and affiliated companies (PRODUCER).

1. **Services** – GSI will be PRODUCER's exclusive agent for the sale of coal to ESSAR Steel Algoma in Sault Ste. Marie, ON (CUSTOMER). GSI may represent other 3rd party coals to CUSTOMER so long as such coal does not displace PRODUCER's available coal that is requested by CUSTOMER, unless PRODUCER agrees to such displacement.

    GSI services shall include, by way of illustration and not of limitation: analysis and monitoring of opportunities to sell coal to CUSTOMER on both spot and term basis. Further, GSI shall provide consulting and advisory services in connection with sales, marketing, transportation, logistics, contractual terms and conditions related to the sale of PRODUCER coal to CUSTOMER. GSI will assist in preparation of proposals, documents and contracts. GSI will negotiate on behalf of PRODUCER on contract terms, disputes and all other issues relating to the sale of PRODUCER's coal to CUSTOMER. GSI will also assist on general contract administration for all contracts with CUSTOMER until they are fully performed.

2. **Approvals – Disclosure** - All sales offers and proposals to the CUSTOMER made by GSI on behalf of PRODUCER will require prior review and approval by PRODUCER, or, in the alternative, shall be contingent on PRODUCERs consent. GSI shall have no independent authority to bind PRODUCER to any contract, or term or condition of contract under any circumstances. Unless mutually agreed otherwise, PRODUCER shall be the seller in all business arranged with the CUSTOMER by GSI on behalf of PRODUCER.

3. **Coal Sales and Marketing Fees** – PRODUCER will pay GSI the sum of two percent (2%) of the FOB mine price for each net ton of coal sold under this agreement.

4. **Payments** - PRODUCER will pay the above fee to GSI within five (5) business days of PRODUCER receiving payment in cleared funds from the CUSTOMER. GSI will only receive payment for coal for which PRODUCER has received payment. PRODUCER will pay 1.5% per month, pro rata interest on any past due amounts.

5. **Term** -This Agreement shall be effective January 1, 2015 and shall remain in effect until terminated under the provisions of paragraph 6.

6. **Termination** – Unless the parties agree otherwise in writing, this Agreement shall terminate upon the termination of all coal sales agreement(s) concluded between PRODUCER and CUSTOMER) (including renewals and extensions) which were arranged, initiated or concluded by GSI. GSI may terminate this agreement at any time upon 30 day written notice to PRODUCER. Upon termination of this agreement, PRODUCER shall be obligated to pay commissions on all sales concluded with CUSTOMER contracted for prior to the termination date.

7. **Independent Contractor** - All coal sales services provided by GSI hereunder will be in the capacity of an Independent contractor and not as an employee, partner or joint venture of PRODUCER, its subsidiaries or successor.

8. **Expenses** – GSI will be responsible for its expenses including travel, entertainment and foreign agents, unless pre-approved and agreed to by PRODUCER.

9. **Compliance with Laws** -

(a) Each of the parties shall comply with (i) all federal state and local laws, rules and regulations, including, without limitation, all laws and regulations of the Republic of Korea or any other sovereign nation having jurisdiction over a party to this agreement, or any person, firm or entity for which a party may be responsible, applicable to the performance of its obligations hereunder and (ii) the provisions of the Foreign Corrupt Practices Act of 1977 of the United States of America, and the Canadian Corruption of Public Officials Act, (and any related laws, rules and regulations) and, in that connection:

(i) shall not undertake nor cause to be undertaken any activity which is illegal under the laws of the Unites States of America, or any other country in which work under this Agreement is being conducted, or any political subdivision of any of the foregoing; and

(ii) shall not directly or indirectly offer, pay, promise to pay, or authorize the payment of any money or offer, give, promise to give, or authorize the giving of anything of value to any officer or employee of any government, or any department, agency, instrumentality or wholly-owned corporation thereof, any political party employee or official, or any candidate for political office or any political subdivision thereof, or any person, while knowing or having reason to know that all or a portion of such money or thing of value will be offered, given or promised, directly or indirectly, to governmental officials, in each case for the purpose of (A) influencing any act or decision of any such governmental official, including a decision to fail to perform his official functions, (B) inducing any such official to do or omit to do any act in violation of the lawful duty of such official, or (C) inducing any such government official to use his influence with any government, department, agency or instrumentality in order to assist any of the Parties or PRODUCER in obtaining or retaining business with, or directing business to any person.

(b) Each party agrees to notify the other party immediately of any solicitation, demand or other request for anything of value, by or on behalf of any government official, political party, political party official, or any candidate for political office relating to the subject matter of this Agreement.

(c) Either party shall provide to the other party, on or before the 60th day after written notice requesting certification to the effect that it has not, and its affiliates or sub-agents have not, made any payments, directly or indirectly, in violation of this Section 9. Each parties represents and warrants to the
PL
3/9/15

other party that prior to the execution of this Agreement, it and its affiliates have not taken any action, or failed to take any action, with respect to its activities hereunder if that act or failure to act would have violated this Section 9.

10. **Indemnification** - Notwithstanding any other provision of this Agreement, PRODUCER shall indemnify, defend and hold harmless GSI and it's respective officers, directors, affiliates, employees and representatives from and against any claim, loss, damages, liability, expense or cost of whatever nature, including reasonable attorneys' fees and costs, arising out of or related to any failure by PRODUCER (including its affiliates, directors, agents, employees and officers) to comply with the provisions set forth in Section 9(a).

Notwithstanding any other provision of this Agreement, GSI shall indemnify, defend and hold harmless PRODUCER and it's respective officers, directors, affiliates, employees and representatives from and against any claim, loss, damages, liability, expense or cost of whatever nature, including reasonable attorneys' fees and costs, arising out of or related to any failure by GSI (including its affiliates, directors, agents, employees and officers) to comply with the provisions set forth in Section 9(a).

11. **Notices** – Any notice given under this Agreement shall be in writing and delivered by USPS Registered Mail or any other service providing a written receipt, contemporaneous with the delivery of such notice.

12. **Entire Agreement** - This Agreement constitutes the entire agreement between the parties with respect to the coal sales services to be performed by GSI and can only be modified by written instrument signed by both parties.

If the foregoing is acceptable to you, please so indicate by signing and dating this letter in the space provided below.

PRODUCER                                Global Sales Innovations, LLC

By: _____                   By: _____

Its: Chief Operating Officer            Its: PRESIDENT

7C
3/9/15